IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| HDI GLOBAL SPECIALTY SE,<br><br>Plaintiff,<br><br>v.<br><br>FLAVIO MORALES, ALPHA OMEGA CONSTRUCTION GROUP, INC., ROYAL PALMS PROPERTY OWNERS ASSOCIATION, INC., and SUSAN RHODEN,<br><br>Defendants. | **Civil Action No.:** 2:26-cv-02570-DCN<br><br><br><br>**COMPLAINT FOR DECLARATORY JUDGMENT**<br>**(Non-Jury)** |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, HDI Global Specialty SE, formerly known as International Insurance Company of Hannover SE (hereinafter referred to as "HGS"), by and through its attorneys, for its Complaint against Defendants Flavio Morales ("Morales"), Alpha Omega Construction Group, Inc. ("Alpha Omega"), Royal Palms Property Owners Association, Inc. ("Royal Palms"), and Susan Rhoden ("Rhoden"), alleges the following.

## PARTIES

1.      HGS is a foreign company with its principal place of business located in Hannover, Germany. HGS actively conducted the business of issuing insurance policies in South Carolina and in this district. HGS is authorized to transact business and write insurance policies in the State of South Carolina.

2.      Upon information and belief, Defendant Flavio Morales is a sole proprietor conducting business in Charleston County, State of South Carolina, and at all times relevant hereto

was engaged in the design, development, construction and/or repair of residential housing and specifically, the roof and related flashings and components to the townhome development known as Royal Palms, located in Mount Pleasant, South Carolina.

3.      Upon information and belief, Defendant Royal Palms is a non-profit organization existing under the laws of the State of South Carolina and is the property owners' association for the Royal Palms Community located in Charleston County, South Carolina.

4.      Upon information and belief, Defendant Alpha Omega Construction Group, Inc. is a company organized in the State of North Carolina, conducting business in Charleston County, State of South Carolina, and at all times relevant hereto was engaged in the design, development, construction and/or repair of residential housing and specifically, the roof and related flashings and components to the property known as Royal Palms, located in Mount Pleasant, South Carolina.

5.      Upon information and belief, Susan Rhoden is the owner of a townhome located within Royal Palms, more particularly described as 1267 Dingle Road, Mount Pleasant, South Carolina in the Royal Palms Community (hereinafter "Royal Palms"), located in Charleston County, South Carolina and is a citizen and resident of Charleston County.

## JURISDICTION AND VENUE

6.      This is a Declaratory Judgment Action under 28 U.S.C. §§ 2201-2202, and Rule 57 of the *Federal Rules of Civil Procedure*.

7.      A justiciable controversy exists between HGS and the defendants within the meaning of 28 U.S.C. § 2201 regarding the amount of insurance coverage (if any) available under the insurance policy issued by HGS, as described below.

8.      This Court has jurisdiction under 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum of $75,000 exclusive of interest and costs, and the dispute is between a citizen of a foreign state and citizens of different states.

9.      Venue is proper in this district under 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to this action occurred in this district.

## GENERAL ALLEGATIONS

### HGS ISSUED INSURANCE TO FLAVIO MORALES

10.     HGS issued insurance policy IG06C002577-00, effective from February 19, 2014, to February 19, 2015, to Flavio Morales providing commercial general liability coverage ("the Policy"). A true and correct certified copy of the Policy is attached hereto as "Exhibit 1" and incorporated herein by this reference.

11.     HGS references the Policy for all of the terms, conditions, and provisions related to the matter and dispute between the parties and incorporates them by reference herein.

12.     The Policy provided coverage to Flavio Morales in connection with his operations as a residential and commercial roofing contractor, including coverage for certain "bodily injury" and "property damage" risks under the insuring agreement and excluding certain risks through policy exclusions. HGS references the Policy for all the terms, conditions, and provisions therein and incorporates them by reference herein.

13.     The Policy provides the following definitions:

Section V - DEFINITIONS

8.      "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

      a.      It incorporates "your product" or "your work" that is known or thought to be        defective, deficient, inadequate or dangerous; or

b.      You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

13.     "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

16.     "Products-completed operations hazard"

a.      Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1)      Products that are still in your physical possession; or

(2)      Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a)      When all of the work called for in your contract has been completed.

(b)      When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

(c)      When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b.      Does not include "bodily injury' or "property damage" arising out of:

(1)      The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that

condition was created by the "loading or unloading" of that vehicle by any insured;

(2)    The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3)    Products or operations for which the classification listed in the Declarations or policy schedule, states that products-completed operations, are subject to the General Aggregate Limit.

17.    "Property damage" means:

a.    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18.    "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a.    An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b.    Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

21.    "Your product":

a.    Means:

5

(1)   Any goods or products, other than real personal property, manufactured, sold, handled, distributed or disposed of by:

   (a)   You;

   (b)   Others trading under your name; or

   (c)   A person or organization whose business or assets you have acquired; and

(2)   Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b.   Includes:

(1)   Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of your products, and

(2)   The providing of or failure to provide warnings or instructions.

c.   Does not include vending machines or other property rented to or located for the use of others but not sold.

22.   "Your work":

a.   Means:

(1)   Work or operations performed by you or on your behalf; and

(2)   Materials, parts or equipment furnished in connection with such work or operations.

b.   Includes:

(1)   Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

(2)   The providing of or failure to provide warnings or instructions.

6

14.     The Policy's insuring agreement under the Commercial General Liability Form CG 00 01 12 07 covers "property damage" and "bodily injury" that occurs during the policy period and provides as follows:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

SECTION I

COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1.     Insuring Agreement.

a.     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1)     The amount we will pay for damages is limited as described in Section III –Limits Of insurance; and

(2)     Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

b.     This Insurance applies to "bodily injury" and "property damage" only if:

(1)     The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2)     The "bodily injury" or "property damage" occurs during the policy period;

(3)     Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that

7

the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" injury" or "property damage" during or alter the policy period will be deemed to have been known prior to the policy period.

c.      "Bodily Injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d.      "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

(1)     Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2)     Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3)     Becomes aware by any other means that "bodily injury or "property damage" has occurred or has begun to occur.

e.      Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

15.     The policy contains the following Condominium, Townhouse or Tract Housing Limitation Endorsement form IICHL 40 62 08 12:

**CONDOMINIUM, TOWNHOUSE OR TRACT HOUSING COVERAGE LIMITATION ENDORSEMENT**

This endorsement modified insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

8

The following is added to SECTION I – COVERAGES, paragraph 2, Exclusions of COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY and paragraph 2, Exclusions of COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY:

This insurance does not apply to:

**Condominium and Townhouse**

"Bodily injury", "property damage" or "personal and advertising injury" however caused, arising, directly or indirectly, out of, or related to an insured's sub-contractor's operations, "your work", or "your product", that are incorporated into a condominium or townhouse project. This exclusion applies only to projects that exceed 25 units.  This exclusion does not apply if "your work" or "your product" is to repair or replace "your work" or "your Product" that occurred prior to completion and certification for occupancy.

**Tract Housing**

"Bodily injury", "property damage" or "personal and advertising injury" however caused, arising, directly or indirectly, out of, or related to an insured's sub-contractor's operations, "your work", or "your product", that are incorporated into a "tract housing project or development".

This exclusion does not apply if "your work" or "your product" occurs after the "tract housing project or development" has been completed and certified for occupancy, unless "your work" or "your product" is to repair or replace "your work" or "your product" that occurred prior to completion and certification for occupancy.

As used in this endorsement, the following is added to **SECTION V – DEFINITIONS**:

"Tract housing" or "tract housing project or development" means any housing project or development that includes the construction, repair or remodel of twenty-five (25) or more residential buildings by our insured in any or all phases of the project or development.

### FACTS UNDERLYING THE COVERAGE ISSUES

16. A justiciable controversy exists between the parties.

17. The Royal Palms Townhomes development in Mount Pleasant, South Carolina was constructed in two phases, with the second phase being conducted between 2014-2016.

9

18. Alpha Omega served as the roofing subcontractor for developer/general contractor, Lennar, for the second phase of construction.

19. Upon information and belief, Flavio Morales served as a subcontractor to Alpha Omega and performed roofing work on 40 townhome units in the development during the second phase of the construction from August 2014 to December 2015.

20. Upon information and belief, the 40 townhome units that Flavio Morales worked on include those bearing the following street address numbers on Dingle Road in the Royal Palms development: 1186, 1194, 1196, 1198, 1200, 1202, 1204, 1219, 1220, 1221, 1222, 1223, 1224, 1225, 1226, 1227, 1228, 1229, 1233, 1244, 1246, 1247, 1249, 1251, 1256, 1257, 1258, 1259, 1260, 1261, 1262, 1263, 1264, 1265, 1267, 1271, 1273, 1275, 1277, 1281.

## THE ROYAL PALMS ACTION

21. On April 17, 2026, a Seventh Amended Complaint was filed against contractors and subcontractors who worked on the Royal Palms townhome development, including Flavio Morales, in the case styled *Royal Palms Property Owners Association, Inc. v. Alpha Prime, LLC, et al.*, Case No. 2020-CP-10-03931 in the Court of Common Pleas of Charleston County, South Carolina (the "Royal Palms Action"). The Seventh Amended Complaint is the operative pleading in the Royal Palms Action and is attached hereto and incorporated by reference as "Exhibit 2".

22. In the Seventh Amended Complaint, Royal Palms alleges "Royal Palms is comprised of seventy-two (72) townhomes located in fourteen (14) buildings and related common elements." (Royal Palms Action ¶ 3).

23. Royal Palms further alleges that "latent design and construction defects at the Project have resulted in repeated and continual exposure to water intrusion into the Project and other consequential damages to the exterior of the buildings. Each year since completion new areas

10

of damage have occurred, separate and apart from any damage already in progress of occurring." (Royal Palms Action ¶ 87).

24.     Against Flavio Morales in the Royal Palms Action, the plaintiff asserts claims of negligence/gross negligence and breach of implied warranty.

25.     Additionally, in the Royal Palms Action, Alpha Omega filed crossclaims against Flavio Morales including claims for indemnity, negligence, breach of warranty, and breach of contract. A true and correct copy of the Answer to the Seventh Amended Complaint containing Alpha Omega's crossclaims against Flavio Morales is attached hereto as "Exhibit 3" and incorporated herein by reference.

## TENDER TO HGS

26.     The Royal Palms Action has been tendered to HGS by plaintiff's counsel in the Royal Palms Action, and HGS has agreed to provide a defense to Flavio Morales subject to a reservation of rights, including the issues raised by the Condominium, Townhouse Or Tract Housing Coverage Limitation Endorsement.

27.     HGS issued a reservation of rights letter to Flavio Morales on July 20, 2022, agreeing to provide a defense to him in the Royal Palms Action under a strict reservation of rights. A true and correct copy of the reservation of rights letter is incorporated hereto as "Exhibit 4". These rights are fully reserved and HGS continues to reserve all rights as set forth therein.

28.     Pursuant to the Condominium, Townhouse Or Tract Housing Coverage Limitation Endorsement, there is no coverage for "property damage" however caused, arising, directly or indirectly, out of, or related to an insured's sub-contractor's operations, "your work", or "your product" (as defined in the policy), that are incorporated into a condominium or townhouse project for projects that exceed 25 units.

11

29.     Flavio Morales performed work on 40 townhome units, and therefore the Condominium, Townhouse Or Tract Housing Coverage Limitation Endorsement precludes coverage for this loss.

30.     This claim is ripe for adjudication because a demand has been made on the insurer, the coverage dispute is limited to a determination of the coverage provided by the insurer to the insured, and it is not dependent on any facts or allegations still being developed in the pending Royal Palms Action.

31.     Based on HGS's investigation, HGS is informed and believes that the Claim, including all claims against Flavio Morales in the Royal Palms Action, is currently precluded from coverage by application of the Condominium, Townhouse Or Tract Housing Coverage Limitation Endorsement.

32.     Further, based on HGS's investigation, HGS has no duty to defend or pay any damages under the Policies as a result of the Exclusion.

33.     HGS only seeks declaratory judgment as to the application of the Condominium, Townhouse Or Tract Housing Coverage Limitation Endorsement at this time and does not waive any other coverage defenses or contentions available to it under the Policy or at law.

## FOR A FIRST CAUSE OF ACTION

34.     HGS adopts and incorporates the allegations of paragraphs 1 through 33 above.

35.     HGS issued commercial general liability policy IG06C002577-00 effective February 19, 2014 to February 19, 2015 to Flavio Morales, incorporated as "Exhibit 1".

36.     The Royal Palms Action is excluded from coverage under the Policy because the Condominium, Townhouse Or Tract Housing Coverage Limitation Endorsement precludes

coverage for Flavio Morales' work on more than 25 units in the Royal Palms townhome development that is at issue in the Royal Palms Action.

37.    HGS is entitled to a declaration that the Policy does not provide coverage to Flavio Morales for the claims asserted against him in the Royal Palms Action due to the application of the Condominium, Townhouse Or Tract Housing Coverage Limitation Endorsement and that HGS has no duty to defend or pay any damages related to this loss.

WHEREFORE, HGS prays that the Court inquire into these matters and issue a declaration that the Policy issued by HGS to Flavio Morales does not provide commercial general liability coverage to Defendant Flavio Morales for the allegations against him in the Royal Palms Action due to the application of the Condominium, Townhouse Or Tract Housing Coverage Limitation Endorsement, together with such other and further relief as this Honorable Court may deem just and proper.

Respectfully submitted,

Dated:  June 29, 2026                BURR & FORMAN LLP

By      s/Benjamin E. Nicholson, V
        Benjamin E. Nicholson, V
        (Fed. ID No. 4958)
        nnicholson@burr.com
        Benjamin R. Jenkins, IV
        (Fed. ID No. 14138)
        bjenkins@burr.com
        1221 Main St., Suite 1800 (29201)
        P.O. Box 11390 (29211)
        Columbia, South Carolina
        T: 803.799.9800

        *Attorneys for Plaintiff*